Anthony O. Egbase, Esq. SB#181721
Law Offices of Anthony O. Egbase & Associates
350 S. Figueroa Street, Suite 189
Los Angeles, CA 90071
Tel: (213) 620 -7070; Fax: (213) 620 -1200

Attorney for Debtor and Debtor-in- Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re. | CASE # 2:10-bk-38053-AA<br>Chapter 11 |
| CHUNYI AN AND STEVE KWANGSOK AN | **DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR USE OF CASH COLLATERAL ON INTERIM BASIS PENDING A FINAL HEARING;** |
| Debtor-in-Possession | Memorandum of Points And Authorities In Support Thereof |
| | Filled with Declaration of CHUNYI AN |
| | Hearing |
| | Date: _____ TBS |
| | Time: _____ TBS |
| | Place: Courtroom _____<br>255 East Temple Street,<br>Los Angeles, CA 90014 |

TO THE HONORABLE ALAN M. AHART, UNITED STATES BANKRUPTCY

JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR'S TWENTY

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL.

LARGEST UNSECURED CREDITORS; THE DEBTOR'S SECURED CREDITORS; AND ALL OTHER PARTIES ENTITLED TO NOTICE:

Pursuant to Local Bankruptcy Rules 2081-1(a)(9), 4001-2, 9075-1, and Section 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure, CHUNYI AN AND STEVE KWANGSOK AN., the debtor and debtor in possession in the above-captioned case ("Debtor"), hereby brings this emergency motion (the "Motion") for the entry of an order :

(i) authorizing the Debtors to use cash collateral on an interim basis to make post petition mortgage payment to Nara Bank creditor (Lender) and pay for necessary operating expenses (building maintenance and utilities) pending a final hearing in accordance with the Debtor's post-petition operating budget (the "Budget"), a copy of which is attached as to this motion as Exhibit "A" and further annexed to the Declaration of Chunyi An filed concurrently with this motion.

(ii) authorizing Debtors to grant first priority post-petition liens on and security interests in the property of the estate hereinafter described in favor of the Lenders Nara Bank to secure the use of cash collateral to the extent necessary to adequately protect the Lenders against any diminution in the value of its collateral from the date of the filing of the within Petition through the term of the proposed order filed attached hereto as Exhibit B (the "Proposed Order");

(iii approving the use of cash collateral on an interim basis pending final approval (the "Interim Order");

(iv) setting procedures for providing appropriate notice of the foregoing; and

(v) granting other related relief.

The relief sought in this Motion is based upon this Motion, the annexed Memorandum of Points and Authorities and Declarations of Chunyi An (An's Declaration) in support of the

The relief sought in this Motion is based upon this Motion, the annexed Memorandum of Points and Authorities and Declarations of Chunyi An (An's Declaration) in support of the Motion, filed concurrently with Motion, the statements, arguments and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court at or prior to the hearing on this Motion.

Dated: July 13 , 2010

Anthony O. Egbase, Esq.
Attorney for Debtors

Chunyi An  and Kwang Sok An

## TABLE OF CONTENTS

1    NOTICE OF MOTION ............................................................................................ 0

2    MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 3

        Summary. .................................................................................................. 3

    A. Background. ................................................................................................ 3

        i.    Business operations of Debtor ........................................................ 3

        ii.   Pre-petition History. ...................................................................... 5

                B    Description of Debtors Major Assets and Liabilities.. ................... 5

                3. Creditors' Committee. ....................................................... 6

                4. Jurisdiction. ........................................................................ 7

                5. Debtor Pre Petition Financing .......................................... 7

                6. Pre-petition Collateral ....................................................... 7

                7. Perfection of Pre-petition Security Interests and Liens ..................... 8

                8. Debtor's Urgent Need for Use of Cash Collateral........................... 8

                9. Relief Requested ................................................................ 10

                10. Approval of the Proposed order is in the Best Interests Creditors and the
                Estate. .......................................................................................... 10

11. Notice of Final Hearing ..................................................................... 11

12. Discussion........................................................................................ 11

        A. The Debtor Must Be Authorized To Use Cash Collateral to Operate, Maintain and
        Preserve Its Business in Accordance with the Budget. ......................................... 12

        B. The Lender Is Adequately Protected by the Debtor's Continued Use Of Cash
        Collateral, the Use Of Cash Collateral Preserves The Creditor's Secured Lien---------13

Conclusion ................................................................................................ 11

## TABLE OF AUTHORITIES

### FEDERAL CASES

In re Oak Glen Rvee,
    8 B.R. 213, 216 (Bankr. CD. Cal. 1981); 99 B.R. 117 (N.D. Ga. 1989) ................................ 13

In re Tucson Industrial Partners,,
    , 129 B.R. 614 (B.A.P. 9th Cir. 1991). ................................................................................ 13

In re Dynaco Corporation,,
    789 F.2d 1085 (4th Cir. 1986) ............................................................................................. 13

In re Stein
    19 B.R. 458, 459 (Bankr. E.D. Pa. 1982). ........................................................................... 13

. In re Mellor,
    734 F.2d 1396, 1400 (9th Cir. 1984). .................................................................................. 13

In re O'Connor,
    808 F.2d 1393, 1398 (10th Cir. 1987); ................................................................................ 13

In re McCombs Properties VI, Ltd.,
    88 B.R. 261, 265 (Bankr. C.D. Cal. 1988) ("McCombs") ..................................................... 13

United Savings Association v. Timbers of Inwood Forest Associates,
    108 S.Ct. 626, 629 (1988) ("Timbers") ............................................................................... 14

    In re McCombs, Id., at 266, Section 506(a) ......................................................................... 14

In re McGowan,
    6 B.R. 241, 243 (Bankr.E.D.Pa.1980) ................................................................................. 14

In re Rogers Development Corp.
    2 B.R. 679, 685 (Bankr.E.D.Va.1980) ................................................................................. 14

In re Taffi,,
    F.3d 1190, 1192 (9th Cir. 1996) (en banc). .......................................................................... 14

In re Kim,,
    130 F.3d 863, 865 (9th Cir. 1997); ...................................................................................... 14

<u>In re Penz...</u>

   102 B.R. 826, 828 (Bankr. E.D. Okla. 1989) ......................................... 14

<u>In re Triplett,</u>
   87 B.R. 25 (Bankr. W.D.Tex. 1988)....................................................... 15

<u>In re Stein,,</u>
   L.P, 299 B.R 400,410 C Bankr. Tex. 2003) .......................................... 15

<u>In re Cafeteria Operators...</u>
   163 B.R. 964 (Bankr. D. Del. 1994) ...................................................... 15

   <u>In re Skagit Pacific Corp...</u>  ................................................................. 15

316 B.R. 330, 336(9th Cir. B.A.P 2004)

**FEDERAL STATUTES**

11 U.S.C. § 101(a)............................................................................ 2,

28 U.S.C. § 157(b)(2) ....................................................................... 7

11 U.S.C. §§ 1408 ........................................................................... 7

11 U.S.C. §§ 1409 sections 363, 1107(a) and 11 08 ................................... 7

11 U.S.C. §363(c)(1) ....................................................................... 12

11 U.S.C. §1107(a) ......................................................................... 12

11 U.S.C. §363(a). Section 363(c)(2)..................................................... 12

11 U. S.C. §363(c)(2)(A) and (B)......................................................... 13

11 U.S.C. § 363(c)(2)(B) ................................................................... 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### Summary

The Debtors filed a voluntary, petition under Chapter 11 of the Bankruptcy Code on July 8, 2010 (the "Petition Date"). The Debtors continues to operate their business, manage their financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

1.       By this Motion, Debtor Chunyi An seeks interim authority to use the cash collateral of Nara Bank and Yuen Fan Tse Yeung (hereinafter Lenders). As indicated in more detail below, and also in the An Declaration, Lender claims and Debtor believes, after preliminary investigation including title search, that Lenders have perfected security interest in the cash collateral of the Debtor, for the rents received from the Debtor commercial real property located at 1522 N. Indiana Street, Los Angeles, Ca 90063, (Subject Property). The funds which is cash collateral, is the Debtor's only funds available to make the Debtors post petition mortgage payments and other necessary operating expense, as Debtor has been unable to secure other debtor-in-possession financing. While the Debtor will attempt to reach the terms of a consensual cash collateral arrangement with the Lenders given the Debtor's immediate cash needs, the Debtor believes that there is an insufficient amount of time to finalize a consensual agreement with the Lender prior to the time of the hearing on the Motion.

2.       In 2006, Debtor purchased the Commercial Real Property "Property" for approximately $3,070,000.00. To consummate the purchase, in October, 2006, Debtor Chunyi An reached and agreement and obtained $1.7 million as business loan from Lender (Nara Bank) towards the purchased of the commercial property with "Subject Property". Further Debtor also reached and an agreement and borrowed $700,000.00 from the prior owner Yuen Fan Tse Yeung ("Yeung").

3.      Debtor obligations under the Loan Agreements are secured by the first Deed of trust on the subject property on behalf of Nara Bank and a second deed of trust against the Property on behalf Yuen Fan Tse Yeung. Due to the exigent need for the debtor to use the cash collateral, the debtor seek that the court makes an interim order allowing the Debtor to use the cash collateral while debtor engages in negotiation with Nara Bank and Yuen Fan Tse Yeung (Lenders) to agree upon the terms and conditions for the use by Debtor of Lender's cash collateral.

4.      The Debtor's use of cash collateral is essential to Debtor's reorganization success, in that Debtor needs its available cash from the funds generated from the rental income on the property in order for the Debtor to pay for Debtor's post-petition operating expenses.

5.      Specifically, the Debtor must be able to use cash collateral to pay for all necessary post-petition operating expenses including Loan Payments to the Creditors, taxes, utilities, other necessary maintenance of the commercial property. The Debtor must be able to pay expenses in accordance with the Budget pending a final hearing in order to avoid immediate and irreparable harm to the Debtor's commercial leasing business and this bankruptcy estate.

6.      Approval of the use of cash collateral is necessary to enable Debtor to pay the post petition loan payments to the lenders, and to engage in other necessary post-petition operating expenses including property maintenance, taxes, utilities, inventory and other normal and necessary operating expenses of their rental property

A.      **Background.**

i. **Business operations of Debtor**

7.      Sometime in 2006, Debtor and her spouse soled their restaurant and the premises in Sunland and did a 1031 Exchange for the Subject Property located in 1522 N. Indiana Street, Los Angeles, Ca 90063.

8.      The Debtor purchased the property for Three Million and Seventy Thousand Dollars ($3,070,000.00). The Debtor invested $700,000.00 in the Subject Property and obtained

S.B.A Financing in the amount of $1.7 million from Nara Ban, and seller (Creditor Yuen Fan Tse Yeung) carried back the balance of $700,000 as a second mortgage against the property.

9.    The Debtor currently operates the property as a commercial rental property. In 2009, due to vacancies in the building the Debtor had financial setback that caused the Debtor to fall behind in her financial obligations. To curb the financial depredation the Debtor sought and instituted other income generating business in the property, recently, the Debtor has been able to lease out some of the vacant units.

10.    **ii. Pre-petition History.**

11.    At the time of the purchase Debtor signed estoppel certificates whereby they assumed the leases of the tenants in the premises and total net income generated by the property was $16,500. This sum was enough to pay the liens on the subject property and generate additional income for the debtor. Seller (Creditor Yuen Fan Tse Yeung) also contracted with Debtor to lease part of the property.

12.    Within three months after close of escrow, two of the tenants including the (seller (Creditor Yuen Fan Tse Yeung) moved out of the building. Towards a means to attract more viable tenants, the Debtor proceeded to redress the poor state of the building, hence the Debtor expended the sum of $150,000.00, (One Hundred and Fifty Thousand Dollars) for remodeling and improvements to the property. However, due to the economic down turn, debtor was been unable to obtain financing and had to expend her income towards the remodeling. Debtor was also unable to immediately rent the premises and struggled to stay in the business through the year 2009.

13.    In order to generate more income, debtor sought, obtained a license and started to operate a recycling business. Also in May, 2009, Debtor obtained a license and started a 99 cent store in the premises. However, Debtor suffered another set back when she got sued Centro Eagle. Creditor Centro Eagle obtained a judgment and proceeded to garnished Debtors' bank account.

Additional information on Debtor and the events leading up to this case are set forth in the An Declaration concurrently filed herewith

**B.**   **Description of Debtors  Major Assets and Liabilities.**

14.         Debtors currently generates a approximately $24,060 in total revenue, wherein approximately $14,250 amounts to rental income from the commercial real property.   Debtor mortgage and loan liability on the commercial real property is 9,400.00 monthly to Nara Bank and $4,750.00 per month to Yeung.

15.         Based on the Debtors' unaudited books and records, as of July, 2010, the Debtor 's assets totaled approximately $2.3 Million, including: (i) de minimis cash on hand;   Though most of the Debtors revenue is derived from the operation of the 99 cent store, a significant part of the revenue is derived from the rental income from the Property.

16.         Based on the Debtors' unaudited books and records, as of July, 2010, Debtor liabilities totaled approximately $3.47 million. The Debtors' principal liabilities consisted of (i) approximately $2.4 million in current loans securing the commercial property on behalf of Lenders (Nara Bank and Yuen Fan Tse Yeung) (ii) approximately 1M, in mortgage Note securing the Debtors  residential real estate for the benefit of Bank of America and Wells Fargo Bank

17.         The Debtors' main secured creditors are Nara Bank, and Yuen Fan Tse Yeung who possess the mortgage lien on the commercial real property (subject property). Meanwhile, Bank of America and Wells Fargo Bank possess lien on Debtor's residential real property.

18.         In October, 2006, in order to consummate the purchase of the commercial real property, Debtor obtained $1.7 million as business loan from Nara Bank and further obtained a loan in the amount of $700,000.00 (Seven Hundred Thousand) from Yuen Fan Tse Yeung. The loan is evidenced by the promissory notes dated October 11, 2006, attached herein as Exh C and Exh D, respectively.   Debtor  obligations under the Loan Agreement to Nara Bank is

secured by a first Deed of trust on the subject property while Debtors obligation to Yuen Fan Tse Yeung is secured by a second deed of trust on the subject property.

19.          **Creditors' Committee**

20.          No creditors' committee has yet been appointed by the United States Trustee

21.          **Jurisdiction**. The Court has jurisdiction over this motion pursuant to 28 U.S.C. 1 57(b)(2). Venue in this District and this motion are proper pursuant to 28 U.S.C. §§ 1408 and 1409.The statutory predicates for the relief requested herein are sections 363, 1107(a) and 11 08 of the Bankruptcy Code.

22.          **Debtor Pre-Petition Financing** The Pre-petition Loan Documents. Debtor and Lenders had entered into certain loan arrangements evidenced by, among other things, the following documents, instruments and agreements (hereinafter, collectively with all other related documents, the "Loan Documents"): Exhibit C for Nara Bank's Loan and Exhibit D Yuen Fan Tse Yeung loan, herein includes:

Exhibit C.— Lender (Nara Bank) Loan.

i.      Business Loan Agreement; Dated- October 11, 2008

ii.     Promissory Note; Dated- October 11, 2008

iii.    Borrower's Certification; Dated- October 11, 2008

iv.     Settlement Sheet; Dated- October 11, 2008

v.      Hazard Insurance Disclosure; Dated- October 11, 2008

vi.     Commercial Security Agreement; Dated- October 11, 2008

vii.    Deed of Trust; Dated- October 11, 2008

viii.   Assignment of Rents; Dated- October 11, 2008

ix.     Hazardous Substances Agreement; Dated- October 11, 2008.

Exhibit D.— Lender (Nara Bank) Loan.

i.      Installment Note ; Dated- October 5, 2006

ii.     Short Form Deed of Trust And Assignment of Rent; Dated October 5, 2006

iii.    Modification Agreement; Dated- January 3, 2007

23.      Upon information and belief, Lender Nara Bank claims that the amount due under the Loan Documents as of June, 2010 (collectively, the "Pre-petition Indebtedness") is $1.67 Million

24.      Upon information and belief, Lender Yuen Fan Tse Yeung claims that the amount due under the Loan Documents as of June, 2010 (collectively, the "Pre-petition Indebtedness") is $726,250

25.      **Pre-petition Collateral.**

Lender Nara Bank claims that the Pre-petition Indebtedness is secured by substantially the Debtor's commercial real property, including rent receipts, and of the Debtors. Also, Lender Yuen Fan Tse Yeung, interest is secured by a 2nd Deed of trust with assignment of rent on the subject property. Subject to verification by post-petition appraisals, Debtors believes that the net salable value of the Pre-petition collateral is approximately $1,500,000

26.      **Perfection of Pre-petition Security Interests and Liens.** The Debtor is not, by the filing of this motion, waiving any right to contest the amount due under the Loan Documents or the priority or perfection of the Security Interests alleged to be held by Lender.

27.      **Pre-petition History.**

**Debtor's Urgent Need for Use of Cash Collateral**

28.      Pursuant to the loan documents, Lenders claims a security interest in all rent receipts from the Subject property. As of the petition date, the Debtor does no have sufficient unencumbered cash on hand to handle the financial obligations without the use of the cash on hand and post-petition proceeds of rent receipts. Specifically, without the use of said cash collateral, the Debtors cannot pay mortgages or make payment for necessary upkeep expenses required to keep the property viable for the tenants and to avoid waste.

29.      The consequences of leaving Debtor without use of cash collateral would have a materially adverse affect on the estate and their creditors. Without the immediate access to cash collateral, the Debtor will not be able to make the mortgage payments to the Lenders nor pay for

any necessary expenses required for the upkeep and maintenance of the property. Such an interruption will make the property not viable for the Debtors business and tenants, and therein resulting to an erosion of the value of the property and estate.

30.    In exercise of sound business judgment, the Debtor has determined, that she requires the use of the Lender's cash collateral in the specific monthly amounts detailed on Proposed interim order attached hereto. The cash flow budget reflects the specific uses to which the funds will be put for the period to be determined by this court

31.    The value of the Debtor's estate can only be maximized through continued operation and viability of the commercial real property. The tenants and the Debtors business is dependent on the viability of the commercial real property which is dependent on paying for its post petition mortgage payments, utilities, maintenance and security.

32.    Based upon the foregoing, it is evident that the consequences of leaving Debtor without use of cash collateral would have a materially adverse affect on the estate and its creditors. Without the immediate access to cash collateral, the Debtor's business operations will be disrupted.

33.    A copy of the Debtor's proposed post-petition operating budget (the "Budget") is attached as Exhibit A and also annexed Declaration of Chunyi An. The expenses contained in the Budget are those expenses the Debtor believes must be paid to enable the Debtor to avoid immediate and irreparable harm to the Debtor's bankruptcy estate. The rental revenues projected in the Budget are the revenues the Debtor projects receiving as rental income.

34.    As set forth in the Budget, while the Debtor projects maintaining a positive cash balance post-petition, these projections are based upon the following assumptions: The Budget assumes that the Debtor will not suffer any interruption or reduction to its business resulting from the filing of its Chapter 11 bankruptcy case, further the Budget assumes that the Debtor will receive the typical cash flow benefit resulting from the automatic stay and the fact that pre-petition unsecured creditors are not paid post-petition until the Debtor reorganizes through a confirmed plan of reorganization.

35.       The Debtor cured all pre-petition arrearages to Nara Bank and the Debtor proposes to make post petition payments to Nara bank. As further adequate protection, the Debtor also proposes to provide the Lender (and any other creditor who asserts a lien against the Debtor's cash collateral) with a replacement lien against the Debtor's assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by such creditor.

**Relief Requested:**

36.       By this Motion, Debtor requests, pursuant to§ 363(c)(2) of the Bankruptcy Code, that this Court enter an order authorizing Debtor to use cash collateral of the Lender in the specific amounts set forth in Exhibit A.  In connection with the foregoing, Debtor also offers to adequately protect the interests of Lender by granting post-petition liens on, and security interest in, the property of the estate in favor of the Lender as adequate protection for their secured claims and by making adequate protection payments to Lender in the amount equal to its present secured interest in debtor's business.

**Approval of the Proposed order is in the Best Interests Creditors and the Estate.**

37.       Debtor believes that the terms and conditions of the Proposed Order are fair and reasonable. Debtor has engaged in a reasonable exploration of the availability of alternate credit and is unable to obtain post-petition credit.

38.       Entry of the Proposed Order is in the best interests of Debtor, its estate and creditors and will enable Debtor among other things, to (I) pay post petition payments to the lenders, (ii) pay utilities and maintain continuity of operations, and (iii) maximize the value of the business and property. In addition, the availability of funds under the Proposed Order will instill confidence in the creditors of Debtor which will facilitate a smooth transition into Chapter 11 and a successful reorganization.

39.       Moreover, Debtor submits that the use of cash collateral contemplated by the Proposed Order is appropriate and proper under the facts herein.  Rental income available to the

Debtor is claimed by the Lender to constitute cash collateral within the meaning of section 363 of the Bankruptcy Code. As indicated above, Debtor cannot maintain the estate post-petition without the use of its rental income.

40.     Based upon the foregoing, Debtor urges the Court to approve the proposed Order, thereby authorizing Debtor to use cash collateral and incur the secured obligations as provided therein.

**Notice and Final Hearing.**

41.     No trustee, examiner or creditors' committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to the United States Trustee, counsel to the Lender, taxing authorities, and the Debtor's: twenty largest creditors and their counsel, if known. Debtor submits that such notice is appropriate and sufficient pursuant to Local Rule 4001-2(b), and Debtor's imminent and urgent need for working capital.

42.     Pursuant to Bankruptcy Rule 4001, Debtor respectfully requests that this Court schedule a final hearing on the relief sought in this Motion for a date on or shortly after (which is after 20 days from the service of the Motion on  and _____ ). Debtor further requests that it be authorized to provide notice of the final hearing by serving a copy of the Motion, together with the order approving the Proposed Order on an interim basis, upon (I) the United States Trustee, (ii) counsel for any committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code, (iii) counsel for the Lender, (iv) the Debtor's Pre-petition unofficial committee of unsecured creditors, (v) any other party which has filed a request for special notice with this Court and served such request on Debtor's counsel, (vi) the list of twenty largest unsecured creditors included on the list filed by Debtor pursuant to Rule 1007, and such taxing authorities as may hold any claim against the Debtors by overnight mail no later than      (except for (I) counsel to the Committee, which will be served as soon as practicable after formation and retention and (ii) any party requesting notice, who will be served as soon as practicable after Debtor's counsel receipt of such request).

43.          No Prior Request No previous request for the relief sought in this motion has been made to this or any other Court.

# DISCUSSION

A.    **The Debtor Must Be Authorized To Use Cash Collateral to Operate, Maintain and Preserve Its Business in Accordance with the Budget.**

The Debtor's use of property of its estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section . . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ." 11 U.S.C. §363(a). Section 363(c)(2) allows the use of "cash collateral" under subsection (OW if:

> (A)    each entity that has an interest in such cash collateral consents; or
> (B)    the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. CD. Cal. 1981); In re Tucson Industrial Partners, 129 B.R. 614 (B.A.P. 9th Cir. 1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of

reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr. D.N.H. 1993), quoting In re Stein, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982).

The source of revenue available to the Debtor to use to operate, maintain and preserve the commercial real property and in turn her business, significantly includes the funds generated from the rental income on the subject property. Debtor will  have no ability to pay for the necessary and required post petition operating expenses required to keep the building viable, unless the Debtor is able to use its cash. The cash which includes cash collateral of the Lender, is necessary for the Debtor to pay the lender's mortgage payments and other Debtor's ordinary operating expenses, including, but not limited to, mortgage payments, utilities, taxes, insurance, and security, trash removal and maintenance (repair) expenses..

**B. The Lender Is Adequately Protected by the Debtor's Continued Use Of Cash Collateral Since the Use Of Cash Collateral Preserves The Creditor's Secured Lien**

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir. 1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988) ("McCombs").

Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood Forest Associates, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, Id., at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." McCombs, Id., at 266.

The law is also clear that the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R. 25 (Bankr. W.D.Tex. 1988). See also In re Stein, 19 B.R. 458 (Bankr. E.D.Pa. 1982).

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In In re O'Connor, supra, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.

**808 F.2d at 1937.**

Debtor proposes to provide to the Lender and to any other creditor who asserts an interest in the Debtor's cash collateral a replacement lien against the Debtor's assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by such creditor. The Debtor's request to use cash collateral to make payment for the necessary expenses required for the upkeep of the commercial real estate, herein amounts to preservation of the commercial real estate (creditors collateral). Further the request use of cash collateral includes making of the post petition mortgage payments to the lender and therein advancing the prospects of reorganization. .

## CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter an Order in the form annexed hereto , which among other things;

1.      Authorizes Debtor to use the cash collateral of the Lender;

2.     Sets the last time and date for the filing of objections to approval of the Proposed Order on a final basis;

3     If an objection to the approval of the Proposed Order on final basis is filed, sets a hearing at a time and place set forth therein to consider approving the Proposed Order on a final basis pursuant to Bankruptcy Rule 4001;

4.     After the final hearing (if necessary), enter a final order, authorizing Debtor to utilize the cash collateral in accordance with the terms and subject to the provisions of the Proposed Order; and

5.     Grant such other and further relief as is just and proper.

Dated: 7/ci/10

Anthony O. Egbase, Esq.
Proposed Reorganization Attorney for Debtor
California Dermatology Center, Inc.

Anthony O. Egbase, Esq. SB#181721
Law Offices of Anthony O. Egbase & Associates
350 S. Figueroa Street, Suite 189
Los Angeles, CA 90071
Tel: (213) 620 -7070; Fax: (213) 620 -1200

Attorney for Debtor and Debtor-in- Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re. | **CASE #2:10-bk-38053-AA** |
| **CHUNYI AN AND STEVE KWANGSOK AN** | Chapter 11 |
| **Debtors-in-Possession** | **ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL ON INTERIM BASIS PENDING A FINAL HEARING;** |
| | **Hearing**<br>**Date:** _____ |
| | **Time:** _____ |
| | **Place: Courtroom** _____ |
| | 255 East Temple Street,<br>Los Angeles, CA 90014 |

At the above-referenced date, time, and location, the Court held a hearing on the Emergency Motion for an Order Authorizing the Use of Cash Collateral on an Interim Basis Pending a Final Hearing (the "Motion") filed by CHUNYI AN AND STEVE KWANGSOK AN (the "Debtors"), the debtors and debtors in possession in the above-captioned chapter 11 bankruptcy

1  case. Appearances were made as set forth on the record of the Court. Upon consideration of the

2  Notice of the Motion, the Motion, the Memorandum of Points and Authorities in support of the

3  Motion, any evidence in support of the foregoing duly admitted into evidence by the Court, the

4  arguments of counsel made at the hearing on the Motion, the record in this case and that no

5  oppositions to the Motion were made, and for good cause shown,

6    IT IS HEREBY ORDERED, as follows:

7    1.    Notice of the Motion was appropriate under the circumstances and complied with

8  the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, as

9  may have been modified by the Court.

10    2.    The Motion is granted on an interim basis pending a final hearing, which shall be

11

12  held on_____, 2010, at ___.m., at the above-referenced location (the "Final

13  Hearing").

14    3.    The Debtor is herby authorized to use cash collateral pursuant to the terms of the

15  Motion and the budget attached hereto as Exhibit "A" through and including the conclusion of

16  the Final Hearing.

17

18    4.    Alleged secured creditors of the Debtor with liens on the Debtor's cash collateral

19  shall be entitled to replacement liens with the same extent, validity, scope and priority as the

20  prepetition liens held by such creditors.

21    5.    Any further oppositions to the Motion must be filed with the Court and served on

22

23  the United States Trustee, parties requesting special notice, the 20 largest general unsecured

24  creditors and counsel to the Debtor so that it is received by no later than _____, 2010,

25  at_____.m.

26    6. Any replies to further oppositions to the Motion must be filed with the Court, with a

27  conformed copy delivered to chambers and a copy served on the United States Trustee, parties

28

requesting special notice, the 20 largest general unsecured creditors and counsel to the objecting party so that any such reply is received by the foregoing parties by no later than _____ 2010, at _____."

**IT IS SO ORDERED.**

_____

**BANKRUPTCY COURT JUDGE.**

| In re: | CHAPTER: 11 |
|---|---|
| Chunyi An<br>Steve Kwangsok An<br>Debtor(s). | CASE NUMBER: 2:10-bk-38053-AA |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

World Trade Center, 350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071

A true and correct copy of the foregoing document described as __Motion for Order Authorizing Debtor to Use cash collateral__ will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d), and (b) in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On __7/15/2010__ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On __7/15/2010__ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

OVERNIGHT MAIL-FEDEX:
Yuen Fan Tse Young c/o Japlan Kaplan, 1112 Fair Oaks Avenue, South Pasadena, CA 91030
Nara Bank 2727 Olympic Blvd, Los Angeles, CA 90006

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 15, 2010 | JOANNE SANCHEZ | |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

Chunyi An
4518 Lasheart Drive
La Canada Flintridge, CA 91011

Steve Kwangsok An
4518 Lasheart Drive
La Canada Flintridge, CA 91011

Anthony O Egbase, Esq.
Law Office of Anthony O. Egbase & Associates
The World Trade Center
350 S. Figueroa Street, Suite 189
Los Angeles, CA 90

American Honda Finance
6261 Katella Ave, Suite 1A
Cypress, CA 90630

BAC Home Loans Servicing, LP
450 American Street, #SV4516
Simi Valley, CA 93065

Bank of America
PO Box 1390
Norfolk, VA 23501

Centro Eagle
Law Offices of Brad Sures
17042 Devonshire Street, Suite 216
Northridge, CA 91325

Duke Min Snowyclean, Inc.
1540 N. Indiana Street
Los Angeles, CA 90063

Edward Lee, Esq
3550 Wilshire Blvd, Suite 730
Los Angeles, CA 90010


Jayne T. Kaplan
1112 Fair Oaks Avenue
South Pasadena, CA 91030


Kids News
12333 S. Wall Street
Los Angeles, CA 90015


Los Angeles County Tax Collector
P.O. BOX 54018
Los Angeles, CA 90054


Nara Bank
2727 Olympic Blvd
Los Angeles, CA 90006


United Merchant Services
255 Rte 17 South 2nd Floor
Hackensack, NJ 07601


United Merchant Services
255 Route 17 South 2nd Floor
Hackensack, NJ 07601


US Bank
555 SW Oak-Suite 200
Portland, OR 97204

US Dept of Education
PO Box 5609
Greenville, TX 75403


Wells Fargo
PO Box 31557
Billings, MT 59107


Wells Fargo Business
PO Box 29482
Phoenix, AZ 85038


Yuen Fan Tse Young
Owner Carry
c/o Law Offices of Jayne T. Kaplan
1112 Fair Oaks Avenue
South Pasadena, CA 91030