Anthony O. Egbase, (SBN 181721)
**LAW OFFICES OF ANTHONY O. EGBASE & ASSOCIATES**
The Wold Trade Center
350 South Figueroa Street, Suite 189
Los Angeles, California 90071
Tel.(213)620-7070;  Fax. (213)-620-1200

Attorney For Debtor,

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| Re:<br><br>**CHUNYI  AN** AND **STEVE KWANG SOK**<br><br>**AN**<br><br>Debtors | **Case No.: 2:10-bk-38053-AA**<br><br>Chapter 7<br><br>**DECLARATIONS OFCHUNYI AN IN SUPPORTS OFDEBTOR'S EMERGENCY MOTIONS**<br><br>**Hearing**<br><br>**Date:** _____ **TBS**<br><br>**Time:** _____ **TBS**<br><br>Place:  Courtroom _____<br>255 East Temple Street,<br>Los Angeles, CA 90014 |

I, Chunyi An, declares as follows:

1 .      I have personal knowledge of the facts set forth below and, if called to testify, I would and

---

DECLARATION OF CHUNYIN AN IN SUPPORT OF EMERGENCY MOTION.                                      1

1   could competently testify thereto.

2   2.    On July 8, 2010, my husband and I filed the instant case under Title 11 of the United States

3   Code (the "Bankruptcy Code") in this Court.   I am the co-debtor in the above referenced matter

4   and offer this declaration in support of Debtors Emergency Motion For An Order To Use Cash

5

6   Collateral on An Interim Basis Pending a Final Order; and Debtors Emergency Motion for an Order

7   Authorizing Debtor To Provide Adequate Assurance Of Future Payment To Utilities Companies; in

8   order to enable the Debtor to operate effectively and minimize the potential adverse effects of its

9

10  Chapter 11 case.

11  3.    Except as otherwise indicated, all facts set forth in this declaration are based on my personal

12  knowledge, my review of relevant documents or my opinion based upon my experience, knowledge

13  and information concerning the operations of my financial affairs. If I were called upon to testify, I

14  would testify competently to the facts set forth in this declaration.

15

16                          BACKGROUND
17                        Business Operations

18  4.    I am the owner of the real property commonly known as 1522-1540 North Indiana Street,

19  Los Angeles, CA 90063 ("Property").

20

21  5.    I operate and manage the property as a commercial real property leasing. The Property has

22  three large warehouses on and I have  tenants that pay me rent on a monthly business. I also occupy

23  small portion of the Property where I operate a small retail store (99cents store) and recycling

24  business.

25

26                    Ownership of Debtor and Indebtedness
27  6.    I purchased the Property through a 1031 exchange in 2006 and paid approximately

28  $3,070,000.00.I borrowed approximately $1,700,000 from NARA Bank ("NARA") which is

---

**DECLARATION OF CHUNYIN AN IN SUPPORT OF EMERGENCY MOTION.**                2

secured by a first deed of trust and $700,000.00 from the prior owner Yuen Fan Tse Yeung

("Yeung") secured by a second deed of trust against the Property.

7.    The monthly mortgage payment to NARA is approximately $9,400.00, and the mortgage

payment to Yeung, is $4,750.00 per month. When I purchased the Property I was collecting rents

in the approximate amount of $16,900.00 per month.

**Events Leading to the Commencement of the Chapter 11 Cases**

8    When I purchased the property, creditor Yeung's business (O Plus, Inc.,) had a 5 years

lease, at the rate of $4,860 a month and the lease was suppose to expire in November, 2010.

However, Yeung moved out after my first month of ownership in the Property and the monthly

rents dropped to approximately $12,200.00 per month.

9.  I continued to pay NARA and Yeung the mortgage payments as they became due from the

      rents I collected and if necessary made up any difference from my personal funds.

10. In January 2009, I suffered a set back as my largest tenant who was paying $6,500.00

      stopped payment of rent and eventually vacated the Property.

11. Thus in January 2009, the rents generated by the Property were approximately $8,000 per

      month.

12. I continued to make the mortgage payments to NARA and Yeung, however, in July 2009, I

ran out of savings and fell behind on the mortgage payments to Yeung and then to NARA

Bank.

13.    On or about December, 2009, following a judgment against me by Centro Eagle, I received

a garnishment order against my bank account and the sum of $9,000 was frozen in my account.

**DECLARATION OF CHUNYIN AN IN SUPPORT OF EMERGENCY MOTION.**                                     3

14.    I am about 2 months behind in my mortgage to the first lender NARA bank, and also behind in my mortgage payment to creditor Yeung, however creditor Yeung has instituted a judicial foreclosure proceeding and filed a Notice of Default on December 19, 2009, and seeks to foreclose on the property.

**Emergency Motion for Order: (1) Authorizing Debtor and Debtor in Possession to Use Cash Collateral; and (3) Scheduling a Final Hearing Thereon.**

**The Debtors Immediate Need For Use Of Cash Collateral .**

15.    The cash that I collect from the tenants in the commercial real property will be deposited into the deposit (DIP) account. These funds are collateral securing the obligation of Lender pursuant to lien encumbering the commercial real property.  Therefore, without the ability to use this cash on hand and the post-petition proceeds from the rents, I cannot make mortgage payments nor pay the utilities and other expenses associated with operating the commercial real estate business.

16.    The use of the cash collateral is needed as without it the operation of the commercial real estate business would be materially adversely affected.

17.    I need to use the cash collateral to make the post petition mortgage payments to the lenders and also to pay for the utilities and other necessary maintenance for the upkeep of the commercial real property.

**18.**    My rental agreement with the tenants requires me to provide certain utilities and maintenance (cleaning, trash and security) to the building.  Without the use of the cash collateral, I will not be able to keep my contractual obligations to the tenants in the building and that could cause the tenants to terminate their lease agreement.

**19.        The Absence of Feasible Alternatives to the Use of Cash Collateral**

---

DECLARATION OF CHUNYIN AN IN SUPPORT OF EMERGENCY MOTION.                    4

sufficient credit on an unsecured, administrative expense basis, to satisfy my financial needs, given that we have no unencumbered assets, any post petition financing, if actually available, would have to be unreasonably expensive.

**21. Current Cash on Hand / Rents From Commercial Real Estate**

22.    On the Petition Date, the I have a total cash on hand of approximately $2,108 plus additional $2,500 in deposits for the balance of the rent collected from the commercial real property.

23.    As indicated on the budget attached herein as Exhibit 1, I currently receive a total monthly rental income of $14,250, from the commercial real property.

**Furniture, Fixtures and Equipment ("FF&E").**

24.    I believes that my FF&E has a total collective current value of approximately $20,000

25.    Goodwill. In addition to the business of commercial real property leasing, my husband and I have an operating, viable and ongoing retail store and recycling business that is capable of generating new business with each passing day. I believe that the Goodwill from the business is values at about $50,000

26.    My primary secured creditors on the commercial real property is Nara Bank, and Yuen Fan Tse Yeung, . As noted above, the Nara Bank asserts a total secured claim in the amount of approximately $1.6 million based on its loan agreements and Yuen Fan Tse Yeung asserts a total secured claim in the amount of approximately $726,250 based on its loan agreements. The loan agreement requires that I make payment of $9,400.00 monthly to Nara Bank and $4,750.00 per month to Yeung.

---

**DECLARATION OF CHUNYIN AN IN SUPPORT OF EMERGENCY MOTION.**                              5

27.    My husband and I also own a residential real property on which our primary secured creditor is Bank of America and Wells Fargo Bank.   Bank of America currently possesses a lien of $954,321 on the residential property, while Wells Fargo Bank possesses a lien in the amount of $121,000 on the residential property. The loan agreement requires that we  make payment of $3,181.00 to Bank of America and $450 per month to Wells Fargo.

28. In addition to the secured debt owing to these lenders, I estimates that we have  approximately $178,000 of unsecured debt

29.    In order to be able to keep the commercial real property business viable while in Chapter 11 proceeding, and avoid immediate and irreparable harm to the estate, I must be able to use (i) all of the cash existing on the Petition Date (approximately $2,500), plus (ii) all of the post-petition rent collections from the commercial real estate to make the loan payments to the lenders and pay for my post-petition operating expenses of the commercial real estate.

30.    The value of the Bankruptcy Estate can only be maximized by keeping the current tenants in the building and continued operation of the commercial real estate. Without use of cash collateral, I will not be able to operate commercial real estate business. In summary, the commercial real estate business and Debtor retails store business can only maintain its value through continued and uninterrupted operations and this can only occur through use of cash collateral.

31.    A copy of our  bankruptcy estate proposed post-petition operating budget (the "Budget") is attached as Exhibit "1"  to our motion to use cash collateral filed concurrently herewith. The Budget contains the expenses I believe must be paid in order for us to be able to operate and preserve the value of the commercial real property leasing business and our retail store business that is located in the property. The Budget is prepared on a monthly basis through December,

---

2010.  The expenses contained in the first month of the Budget are those expenses I believe must be paid to enable the us to avoid immediate and irreparable harm to the bankruptcy estate. The revenues projected in the Budget are the revenues we projects receiving if our business proceeds as planned

32.    As set forth in the Budget, while we projects maintaining a positive cash balance post-petition, these projections are based upon the assumptions that we will not suffer a reduction in business resulting from the filing of its Chapter 11 bankruptcy case. However, the projections will be much more viable as we receive the typical cash flow benefit resulting from the automatic stay and the fact that pre-petition unsecured creditors are not paid post-petition until the Debtor reorganizes through a confirmed plan of reorganization

33.    The expenses that we must be able to pay during the initial interim period of this Chapter 11 bankruptcy case are set forth on a monthly basis in the Budget attached herein as Exhibit- 1

34.    Our inability to pay those expenses would cause immediate and irreparable harm to the commercial real property leasing business and the bankruptcy estate. Indeed, our failure to pay basic and critical operating expenses required to maintain the commercial real property will be tantamount to a breach of our obligations to the tenants and could course the tenants to terminate their lease. Such would decimate the value of the commercial real property and be devastating to the estate and creditors

**Emergency Motion for Order Determining Adequate Assurance of Payment for Post-Petition Utility Services;**

35.    In connection with my commercial real estate leasing business, the lease agreement requires us to provide electricity, water, and waste removal from the building. I receive utility

services from approximately 5 utility companies with different accounts with an average monthly aggregate cost of approximately **$1,105**. A complete list of the companies that provide these utility services (each, a "Utility" and collectively, the "Utilities") is attached herein as Exhibit- 2 and also as an exhibit to the Emergency Motion for Order Determining Adequate Assurance of Payment for Post-petition Utility Services (the "Utilities Motion") filed concurrently herewith.

36.    Uninterrupted utility service is essential to our ongoing commercial real property leasing business. Indeed, any interruption of utility services, could be disastrous and effectively result in substantial disruption of the commercial leasing business operations because the tenants depends on the utilities to conduct their commercial activities. An interruption of the utilities will also amount to a breach of our contractual obligations to the tenants and therein could cause the tenants to terminate their lease agreement. Such would decimate the value of the commercial real property and be devastating to the estate and creditors. Therefore, I believe it is critical that the utility services continue uninterrupted for the benefit of the bankruptcy creditors and patients.

36. I understand that we must provide the Utility Providers with "adequate assurance" of payment for postpetition services shortly after the commencement of this case, which typically takes the form of a deposit. It also is my understanding that, without relief of the Court, a Utility Provider could terminate the utility services if it was not satisfied with the deposit provided. Accordingly, I have requested that the Court approve certain proposed deposits for the Utility Providers and a procedure by which any dispute over the amount of the deposit may be resolved, without risking the precipitous termination of Utility Services.

37. Exhibit-3 shows the deposits that I propose as "adequate assurance," in a total aggregate amount of **$1,105**.  These amounts represent the average monthly amount that I incur for services from each Utility company on the commercial real property. (the "Estimated Monthly Usage").  The estimate is based on an average of each Utility bill in the past twelve months, which is typical for the monthly expenses generally incurred on the commercial real property.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed, on this  July 13, 2010, in Los Angeles, California

CHINYU AN -Debtor

_____                          _____
Name of Declarant                                              Signature of Declarant

# EXHIBIT 1

Kwang Sok and Chun Yi An
dba 99 Cents Store
Projected Statement of Income
For the 12 Months Ending December 31, 2010

| | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Aug-10 | Sep-10 | Oct-10 | Nov-10 | Dec-10 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Projected Sales** | $12,182 | $12,246 | $13,165 | $13,404 | $16,250 | $16,250 | $16,250 | $16,250 | $16,250 | $16,250 | $16,250 | $16,250 | 180,997 |
| **Projected Cost of Sales** | 4,873 | 4,898 | 5,266 | 5,362 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 72,399 |
| **Projected Gross Profit** | 7,309 | 7,348 | 7,899 | 8,042 | 9,750 | 9,750 | 9,750 | 9,750 | 9,750 | 9,750 | 9,750 | 9,750 | 108,598 |
| **Projected Other Income** | | | | | | | | | | | | | |
| Rental Income | 9,750 | 9,750 | 9,750 | 9,750 | 9,750 | 14,250 | 14,250 | 16,750 | 16,750 | 16,750 | 16,750 | 16,750 | 161,000 |
| Water Machine Sales (Net) | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 720 |
| Total other income | 9,810 | 9,810 | 9,810 | 9,810 | 9,810 | 14,310 | 14,310 | 16,810 | 16,810 | 16,810 | 16,810 | 16,810 | 161,720 |
| **Total Projected Income** | 17,119 | 17,158 | 17,709 | 17,852 | 19,560 | 24,060 | 24,060 | 26,560 | 26,560 | 26,560 | 26,560 | 26,560 | 270,318 |
| **Projected operating expenses:** | | | | | | | | | | | | | |
| Advertising | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 600 |
| Bank & Check cashing charges | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 165 | 1,980 |
| Accounting | 630 | 0 | 0 | 0 | 0 | 1,500 | 500 | 500 | 500 | 500 | 200 | 200 | 4,530 |
| Car and Truck Expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| Insurance | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| Mortgage Payment - Commercial Property | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 9,404 | 112,848 |
| Mortgage Payment - Residential Property | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 3,181 | 38,172 |
| Office Expense | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 1,200 |
| Repair and Maintenance | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| Payroll | 750 | 750 | 750 | 750 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 13,000 |
| Payroll Taxes | 150 | 150 | 150 | 150 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 2,400 |
| Rent | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Security | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 40 | 480 |
| Supplies | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,800 |
| Taxes and Licenses | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 2,800 | 33,600 |
| Telephone | 485 | 485 | 485 | 485 | 485 | 485 | 485 | 485 | 485 | 485 | 485 | 485 | 5,820 |
| Trash Removal | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 90 | 1,080 |
| Utilities | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 13,260 |
| **Total projected operating expenses** | 21,350 | 20,720 | 20,720 | 20,720 | 21,295 | 22,795 | 21,795 | 21,795 | 21,795 | 21,795 | 21,495 | 21,495 | 257,770 |
| **Projected Net Income before Tax** | (4,231) | (3,562) | (3,011) | (2,868) | (1,735) | 1,265 | 2,265 | 4,765 | 4,765 | 4,765 | 5,065 | 5,065 | 12,548 |
| Tax Provision | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Projected Net Income** | ($4,231) | ($3,562) | ($3,011) | ($2,868) | ($1,735) | $1,265 | $2,265 | $4,765 | $4,765 | $4,765 | $5,065 | $5,065 | $12,548 |

# EXHIBIT 2

**Utilities Details- For Kwang Sok and Chun Yi An**

| Vendor Name | Office | Type of Utility | # of Accounts | Monthly Cost |
|---|---|---|---|---|
| AT&T | Rental | Local Telephone& Internet | 1 | $ 150.00 |
| Verizon | Rental | Local & Long Distance telephone | 1 | $ 240.00 |
| S. CA Edison | Rental | Electric | 1 | $ 540.00 |
| CA Water Co. | Rental | Water | 1 | $ 175.00 |
| Total | | | | $ 1,105.00 |